# Estate of Anna C. S. Seltzer, Deceased. Appeal of William G. Seltzer.

*Will—Election to take against will—Husband and wife—Rights of survivor—Act of May 4, 1855.*

The intent of the Act of May 4, 1855, P. L. 430, was not to create a special rule to be applied in each case according to the circumstances of the particular husband and wife in respect to children, but to produce equality by a general rule giving husbands and wives equal and similar

rights under similar circumstances. The share which the survivor takes under the act is determined by the existence or absence of issue of the decedent, and is in nowise affected by having or not having issue of his or her own.

Under the act of May 4, 1855, where a husband elects to take against the will of his wife, who has died without children, he is entitled to one half of the personal estate, absolutely, and one half of the real estate, for life, although he himself may have children by a former wife so that if he had died first, his wife would have been entitled to only one third of his personal estate and dower in one third of his realty.

Argued Jan. 6, 1899. Appeal, No. 178, Jan. T., 1898, by William G. Seltzer, from decree of O. C. Phila. Co., April T., 1896, No. 215, in partition. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Petition in partition.

From the record it appeared that Anna C. S. Seltzer, being seized of certain real estate, died, leaving a will by which she devised her real estate to strangers. She left surviving her a husband, William G. Seltzer, the petitioner and appellant here. The husband had children by a former marriage, but the decedent had no children. The husband elected to take against her will under the act of assembly such share and interest in her real and personal estate as she could, if surviving, elect to take against his will in his estate. The orphans' court decreed that he was entitled to only one third of the income of the real estate, instead of one half, because he had children and if he had died, she could have claimed only one third of his estate.

*Error assigned* was the decree of the court.

*John Dolman,* for appellant.—The act clearly contemplates a general fixed rule of distribution, and means that the husband can, against his wife's will, take the same share that she could have taken had he died leaving the same heirs that she left, namely a widow's share under the intestate laws.

*William H. Staake,* with him *Arthur M. Burton,* for appellees.—In the case in hand, by reason of William G. Seltzer having surviving issue by a former wife, his widow, in the event

of his dying testate, would have been confined, in case of election, to one third of the real estate for the term of her life, and to one third of his personal estate absolutely.   This, then, must be the measure of William G. Seltzer's interest in her estate, and it is respectfully submitted that in the present distribution he is only entitled to the one-third part of the clear balance for distribution.

OPINION BY MR. JUSTICE MITCHELL, January 30, 1899:

By the Act of May 4, 1855, P. L. 430, "the power of any married woman to bequeath or devise her property by will shall be restricted as regards the husband to the same extent as the husband's power so to dispose of his property is restricted as regards the wife: namely, so that any surviving husband may, against her will, elect to take such share and interest in her real and personal estate as she can when surviving elect to take against his will in his estate, or otherwise to take only her real estate as tenant by the courtesy."   The construction of this section is the sole question before us.   Did the legislature intend to make a special rule to be applied in each case according to the circumstances of the particular husband and wife in respect to children, or did it intend to make a general rule, applicable to all cases, whereby husbands and wives should have similar rights under similar circumstances?   Standing by itself, the language is susceptible of either construction, but taken in connection with the history of legislation on the subject, the question is easily answered.

The Act of April 11, 1848, P. L. 536, commonly known for half a century as the Married Woman's Act, was the first of the modern statutes that have revolutionized the common-law status of married women as to their property.   By that act her property continued to be hers as completely after marriage as before, so far as related to the control or interference of her husband or liability for his debts.   By section 7 she was given the power to dispose of her separate property, real and personal, by will; by section 9, if she died intestate, leaving no children, the husband took the personal estate, but if there were children living they and the husband took the personalty share and share alike, the descendants of dead children taking per stirpes their parent's share; by section 10 the real estate was distrib-

uted as provided by the intestate laws then in force, with a proviso that nothing in the act should be deemed to deprive the husband of his right as tenant by the courtesy; and by section 11, the 11th section of the Wills' Act of April 8, 1833, P. L.249, was not to be construed to deprive the widow electing to take against her husband's will of her share of the personalty, as well as of the realty.   By the intestate Act of April 8, 1833, P. L. 316, the widow of a man dying intestate and without child took one half his personalty absolutely and half his real estate for life, but if he left a child or children, no matter how many, she took in the same way one third instead of half.   By the act of 1848, as above said, she was empowered to take in this manner even against his will.

This was the state of the law when the act under discussion was passed, and it will be seen that the circumstance of children or no children of the party taking was wholly irrelevant. It was only out of the existence or absence of children of the party whose estate was to be distributed that any question of rights could arise.   If the husband died his widow, under the act of 1833, took one third or one half according as he had or had not issue living, whether she had any or not.   If the wife died intestate the husband, under the act of 1848, took the whole personalty if she left no issue, but if she left issue, then he took only an equal share with each of them, no matter how many there were, and not in any wise affected by his having or not having children of his own.

This condition of the law was soon seen to result in inequality to the prejudice of the husband.   When he died his widow took at least one third of his personalty under any circumstances, and no act of his could lessen this share.   On the other hand, when she died first he took only a child's share of the personalty, no matter how small a fraction that might be, and even of that she could entirely deprive him by will.   The pendulum had swung too far.   From the entire absorption of her personal property by the husband at common law, the wife was now, not only freed during marriage, but vested with a testamentary control to his exclusion, far greater than his control of his own as against her.   It was to remedy this last condition that the act of 1855 was passed, and its plain intent was to produce equality by a general rule giving them equal and similar rights

under similar circumstances. This is clearly expressed in the first sentence, " the power of any married woman to bequeath or devise her property by will shall be restricted as regards the husband to the same extent as the husband's power to dispose of his property is restricted as regards the wife." Had the act stopped here, there would have been no ambiguity, nor any room for question as to the construction—the husband would take in her estate what she could have taken under the acts of 1833 and 1848 in his, if he had died first, one third or one half according as the deceased party had or had not left issue, without regard to the existence or absence of children of the surviving party who was entitled to take. But the act continues, " namely, so that any surviving husband may, against her will, elect to take such share and interest in her real and personal estate as she can, when surviving, elect to take against his will in his estate, or otherwise to take only her real estate as tenant by the courtesy." This phrase as already said is susceptible of construction either as a general rule for both parties in similar circumstances, or as a special rule to be applied in each case according to the special circumstances, not only of the deceased wife, but of the surviving husband. The former construction is in entire harmony with the plain and only tenable construction of the preceding sentence, while the latter is at variance, not only with it, but with the general intent of the act, and introduces an element as to children of the survivor not before relevant or material to either party, and not now relevant in the case of the wife. For it must be observed that the act of 1855 makes no change in the rights of the widow in her husband's estate, it simply imposes a restriction on the wife's testamentary power over her own. The widow can still take against her husband's will one third or one half of his estate, according as he has or has not left surviving issue, without regard to whether she has issue of her own or not. The view of that law is that if the decedent whose estate is to be distributed has left issue whom he is under a moral, if not a legal, obligation to provide for, they shall not be deprived of their shares except by express will of the testator himself, and as to them it is immaterial whether the widow has no children or many. That is the status of the widow's right since the act of 1855, as well as before, and it was the intent of that act to put the rights of the surviv

ing husband on the same footing. The share which the survivor takes is determined by the existence or absence of issue of the decedent, and is in nowise affected by having or not having issue of his or her own.

Decree reversed and directed to be amended in accordance with this opinion.